Dear Ms. Livingston:
This office is in receipt of your request for an opinion of the Attorney General in regard to appointment of a Chief of Police and/or Fire Chief in light of the statutory provisions for classified civil service. You indicate that your office has consistently held that the Municipal Fire and Police Civil Service System is mandatory for those entities meeting the established parameters, and that if anyone is performing the duties of police or fire chief on a full time basis, that position falls within the classified service unless the form of government specifies that it be filled by election. Having received inquiries from two cities which are exploring other options, you ask the following questions:
 1. The system has operated continuously for sixty years, and was designed to provide a continuity of public safety protection through local changes in administration. What type of action could legally remove the position of Fire or Police Chief from the classified service and place it in the unclassified service (i.e. . legislative action to amend Municipal Fire and Police Civil Service Law, constitutional amendment, change in the form of municipal government, or local referendum?)
 2. Opinion Number 83-576 stated that the Hammond City Charter may be amended to provide for the selection of the Fire Chief by some method other than appointment by the mayor or other officer or employee of the municipal government, and that such change would remove the position from the classified service. Other than by election, how could such a public official be legally appointed or selected? Would a contractual agreement or other at-will appointment not be in violation of the provisions of the Municipal Fire and Police Civil Service Law without further legislative action to change the provision of the law?
 3. For those cities who currently have an appointed Police Chief falling within the provisions of the Municipal Fire and Police Civil Service, what type of action would be required to change the position of Police Chief from appointed to elected, assuming that their existing plan of government specifies that the position of Police Chief be appointed?
In response to your question as to what procedure would have to be followed to remove the position of Fire or Police Chief from classified service, we have concluded in Atty. Gen. Op. No. 00-233 that the person performing the duties of the Chief must remain in the Civil Service System unless there is a constitutional change inasmuch as La. Const., Art 10, Sec. 16. creates classified fire and police civil service for all municipalities having a population exceeding thirteen thousand with a regularly paid fire and municipal police department. Moreover, Art. 10, Sec. 18. directs that the legislature "may not abolish the system of classified civil service for such firemen and municipal policemen or make the system inapplicable to any municipality having a population exceeding thirteen thousand." This office opined in accordance with the intent of this Constitutional provision, the legislature cannot abolish civil service for fire and police as a whole or the individual position of Chief.
You note that in Atty. Gen. Op. No 83-876 this office concluded that the position of Fire Chief for the City of Hammond could be changed from a classified civil service position to an unclassified civil service position by amendment of the Hammond City Charter to provide for the selection of Fire Chief by some method other than appointment by the mayor or other officer or employee of the municipal government. The result would be to change the position of fire chief from a classified civil service position to unclassified civil service position.
We find it pertinent to also consider Atty. Gen. Ops. Nos. 83-284, 284A and 284B which asked whether the Chief of Police for the City of Hammond was "locked into" his position through civil service. In Atty. Gen. Op. no 83-284 it was found the chief of police for the City of Hammond is a classified civil service employee and therefore, "locked into" position through civil service. This conclusion was restated in Atty. Gen. Op. No. 83-284A, and finally in Atty. Gen. Op. No. 83-284B it was stated as follows:
 Thus, applying the quoted statute provision and jurisprudence to the case at hand, it is the opinion of this office that the Hammond City Charter cannot be amended to make the appointive position of chief of police an appointive, nonclassified position. However, as stated in Opinion Number 83-284, the position of chief of police may be changed from an appointed one to an elected one by amending the municipal charter to provide for this.
We find that Art. 6, Sec. 5 of the Constitution relative to adoption and amendment of a Home Rule Charter must be read in conjunction with the constitutional provision that mandates the classified civil service for Fire and Police, Art. 10, Sec. 16. The Constitutional provisions relative to Home Rule Charters provides in Art. 6, Sec. 5 for adoption of a Home Rule Charter, for amendment by a majority of the electorate, and that the Charter shall provide the structure and function of the governmental subdivision and exercise of any power for the management of its affairs. However, this is restricted in that it is "not denied by general law or inconsistent with this constitution." Accordingly, we must recognize that the Constitution mandates the establishment of a system of classified fire and police civil service for all municipalities exceeding thirteen thousand, and prohibits the legislature from abolishing the system for such firemen and municipal policemen.
Therefore, we would conclude, except for provisions in a Home Rule Charter that removes the position of Fire or Police Chief from an appointed position which falls in the Civil Service provisions, a constitutional amendment would be required to remove the position of an appointed Fire or Police Chief from the classified service.
With reference to Atty. Gen. Op. No. 83-876 relative to amendment of the Home Rule Charter for selection of the Fire Chief, you inquire what method other than election could be followed for selection to the position, and we must conclude it could be a method approved by a Constitutional amendment or adopted in the Home Rule Charter other than appointment or employment by the municipality, such as you suggest, by contract. . . .
Your final question asking how cities with an appointed Police Chief can change to an elected position was answered in Atty. Gen. Op. No. 89-365. It was observed as follows:
 R.S. 33:381.1 provides a procedure for the conversion of a "marshal who is chief of police" from an elective to an appointive office, and vice versa, from appointive to elective, if at least four years have elapsed from the choice of an appointment procedure for the chief or marshal. This conversion is effected by a majority of qualified electors voting in a special election called by the board of alderman.
Inasmuch as the City of Denham Springs selected to have an appointed Chief of Police in 1970, it was concluded the City could convert from an appointed to an elected Chief of Police by a special election procedure provided by R.S. 33:381.1 which is as follows:
 The marshal who is the chief of police in such municipalities shall be elected at large, provided that, notwithstanding any other provisions of law to the contrary, a majority of the qualified elected, voting therein may, at a special election called by the board of aldermen for that purpose, authorize the mayor to thereafter appoint a marshal with the approval of the board of aldermen. Such special election shall be called only upon the presentation of a petition, directed to the board of aldermen and signed by at least twenty-five percent of the qualified electors of the municipality. Once such an election has been called and held, no further or other election on the same question shall be held for at least four years.
 If the people of any municipality vote to authorize the mayor to appoint the marshal, the first such appointment shall be made at the end of the term of the marshal in office at the time the election was held unless at that time the office of marshal is vacant or the incumbent is an appointed official.
 Upon the expiration of at least four years after the effective date of any such determination that the marshal shall be an appointed rather than an elected official the people of any such municipality may determine that said official shall be elective, but only in the same manner and through the same petition and election procedure as hereinabove set forth.
Finding that removal from civil service must be restricted so as to protect selections and promotions from political influence, we hope this sufficiently answers your inquiry.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr